**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MARTEZ POWELL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-14-765-W** |
| | ) | |
| **JOE ALLBAUGH,** | ) | |
| | ) | |
| **Respondent.[1]** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Martez Powell, a state prisoner appearing *pro se*, has filed a Petition

for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the

constitutionality of his state court conviction and sentence. (ECF No. 1). Respondent

has filed his Response. (ECF No. 12). For the reasons set forth below, it is

recommended that the Petition be **GRANTED**.

## I.   PROCEDURAL BACKGROUND AND ISSUES PRESENTED

On May 3, 2013, Petitioner was convicted pursuant to a guilty plea on one count

of Lewd or Indecent Acts to a Child Under 16 and nine counts of Child Sexual Abuse.

(ECF No. 12-3). On July 24, 2013, Mr. Powell was sentenced to a total of 75 years

imprisonment. (ECF No. 12-4). Following the conviction, Petitioner filed a motion to

---

[1] Mr. Powell is an Oklahoma prisoner who is currently incarcerated at the Davis Correctional Facility—a private prison. In his habeas petition, Mr. Powell named Cleveland County and the Attorney General of the State of Oklahoma, as Respondents. The Oklahoma Department of Corrections ("DOC") bears responsibility for the "custody" and "supervision" of inmates housed in private prisons. *See* Okla. Stat. tit. 57, § 561(A). Therefore, Interim Oklahoma DOC Director Joe Allbaugh, who is the state officer having custody of Petitioner, has been reinstated as the proper respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

withdraw his guilty plea and a hearing was held. Transcript of Proceedings had on August 9, 2013, at the Cleveland County Courthouse Before the Honorable Tracy Schumacher District Judge, *State of Oklahoma v. Powell*, Case No. CF-2012-1394 (Cleveland Co. Aug. 9, 2013) (TR. Motion to Withdraw Hearing). The motion was overruled and Mr. Powell filed a Petition for Writ of Certiorari with the Oklahoma Court of Criminal Appeals ("OCCA"). Brief of Petitioner, Case No. C-2013-763 (Okla. Ct. Crim. App. Jan. 31, 2014) (ECF No. 12-1).

On May 7, 2014, the OCCA denied the Petition for Writ of Certiorari and affirmed Petitioner's conviction and sentence (ECF No. 12-2)*.* On July 18, 2014, Mr. Powell timely filed his habeas petition. In Ground One, Mr. Powell alleges that his guilty plea was not knowing and voluntary because the State failed to honor a plea agreement. (ECF No. 12-1).[2] Petitioner raised this argument in his Petition for Certiorari, but the OCCA rejected the claim. (ECF No. 12-2). The Court should conclude that the OCCA's decision was contrary to Supreme Court precedent. Accordingly, the Court should grant habeas relief and remand the case to state court to allow Mr. Powell to withdraw his plea.

## II.   THE GUILTY PLEA/SUMMARY OF FACTS FORM

Petitioner's guilty plea was memorialized in the Plea of Guilty Summary of Facts form. (ECF No. 12-3). Question 24 of the form asks about the details of a plea agreement, if one exists. (ECF No. 12-3:4). In the space provided, a written statement

---

[2] In support of his petition, Mr. Powell incorporates, by reference, the arguments he made in his Petition for Certiorari to the OCCA. (ECF No. 1:4, 17, 25). He attaches the relevant pages to his petition, but they are out of order. The Respondent filed Mr. Powell's entire Petition for Certiorari with the pages in order, as Exhibit 1 to the Response. (ECF No. 12-1). Accordingly, for purposes of ease and to prevent confusion, when referencing Petitioner's arguments, the undersigned will refer to specific pages in ECF No. 12-1 instead of the Petition.

says: "State will stand on 25 in/15 out at sentencing." (ECF No. 12-3:4). The agreement was signed by Mr. Powell, his attorney, Tyson Stanek, the prosecutor, Christy Miller, and the trial judge, Judge Tracy Schumacher. (ECF No. 12-3:6). In answer to question 25 of the form, Mr. Powell confirmed that he understood that the court was not bound by any recommendation, and that if the court did not accept the plea agreement, he had the right to withdraw his guilty plea. (ECF No. 12-3:5).

## III.  THE GUILTY PLEA HEARING

At the guilty plea hearing, defense counsel Tyson Stanek stated: "At this time my client wishes to withdraw his previous plea of not guilty and enter a plea of guilty pursuant to an agreement with the state to stand on a recommendation at blind plea." Transcript of Plea Proceedings had Friday, May 3, 2013, Before the Honorable Tracy Schumacher District Judge, *State of Oklahoma v. Powell*, Case No. CF-2012-1394 (Cleveland Co. May 3, 2013) at 2 (TR. Guilty Plea Hearing). The trial court examined the Guilty Plea form and asked Petitioner if he had gone over each page, read the questions, and gave true and correct answers. (TR. Guilty Plea Hearing at 3). Petitioner replied affirmatively. (TR. Guilty Plea Hearing at 3). The court reiterated the charges and their related statutory sentence ranges, confirmed that Petitioner knew that the crimes were "85% crimes," and that he would be required to register as a sex offender. (TR. Guilty Plea Hearing at 3). The trial court explained Petitioner's right to a jury trial and asked if he wanted to waive that right. (TR. Guilty Plea Hearing at 4). Petitioner said that he did. (TR. Guilty Plea Hearing at 4-5). Upon Petitioner's affirmation, the trial

court found Petitioner guilty and set the case for sentencing. On the record, neither party nor the trial court discussed the details of the plea agreement.

## IV.    SENTENCING HEARING

At the sentencing hearing, Petitioner affirmed that he wished to stand on his plea of guilty. Transcript of Sentencing Proceedings had Wednesday, July 24, 2013, Before the Honorable Tracy Schumacher, District Judge, *State of Oklahoma v. Powell*, Case No. CF-2012-1394 (Cleveland Co. July 24, 2013) at 3 (TR. Sentencing Hearing). The State then recommended: (1) a 25-year sentence on Count 1, (2) a 25-year sentence on Counts 2-6, to run concurrently, but consecutive to Count 1, (3) a 25-year sentence on Counts 7-10, to run concurrently, but consecutive to Count 1 and Counts 2-6, and (4) a 15-year suspended sentence. (TR. Sentencing Hearing at 3-5). In the aggregate, the prosecutor recommended a 90-year sentence, with all but the first 75 years suspended.

Following the prosecutor's recommendation, Judge Schumacher stated: "Was there something written on the plea form about  - - hold on." (TR. Sentencing Hearing at 14). But the record is silent regarding anything she might have been referring to or read. Judge Schumacher then reminded the Petitioner of his previous guilty plea and inquired whether he would like a jury trial. (TR. Sentencing Hearing at 15-16). Petitioner shook his head "no," and the court announced the sentence in accordance with the State's recommendation for 25 years for each victim, for a total sentence of 75 years in prison. (TR. Sentencing Hearing at 16). This sentence was reflected in the written Judgment & Sentence. (ECF 12-4:3-4).

## V. HEARING ON THE MOTION TO WITHDRAW THE GUILTY PLEA

Following the sentencing hearing, Mr. Powell filed a motion to withdraw his guilty plea and a hearing was held on August 9, 2013. (TR. Motion to Withdraw Hearing). Kevin Finlay appeared as defense counsel and argued that the plea was not knowing or voluntary, in part, because the State had breached an agreement with Mr. Powell regarding a sentence recommendation. The defense argued that the parties had agreed that Mr. Powell would enter a guilty plea in exchange for the State recommending a *total* term of 40 years in prison, with all but the first 25 years suspended. (TR. Motion to Withdraw Hearing at 4-5). In support, Mr. Finlay relied on the Guilty Plea Summary of Facts form and testimony from Mr. Powell.

First, Mr. Finlay examined question 24 of the Guilty Plea form which had defined the terms of the plea agreement as: "the State will stand on 25 in and 15 out at sentencing." (TR. Motion to Withdraw Hearing at 5-6).

Next, Mr. Finlay called Mr. Powell to testify regarding his understanding of the agreement. Mr. Powell testified that prior to entering the plea, he had a conversation with his attorney, Mr. Stanek, regarding a plea agreement. (TR. Motion to Withdraw Hearing at p. 10). According to Mr. Powell, Mr. Stanek told Petitioner that in exchange for Petitioner's guilty plea, the prosecutor would not recommend more than a *total* sentence of 25 years in prison and 15 years suspended. (TR. Motion to Withdraw Hearing at p. 11-12). Petitioner provided details about the conversation, stating that the conversation took place in jail with a witness present. (TR. Motion to Withdraw Hearing at p. 10-11). Mr. Powell testified that based on that conversation, through the day of

the guilty plea, he did not believe that the prosecutor would recommend any more than 25 years in prison, with a 15-year suspended sentence. (TR. Motion to Withdraw Hearing at p. 12-13). Mr. Powell clarified that it was never his understanding that the prosecutor would recommend a 25-year sentence on each of the ten counts. (TR. Motion to Withdraw Hearing at 14).

Finally, Mr. Powell testified: (1) he believed question 25 of the Guilty Plea form allowed him to withdraw his plea if the prosecutor did not honor the plea agreement, (2) following the sentence recommendation, he told his attorney that Ms. Miller had not honored the agreement, and (3) on that basis he wanted to exercise his right to withdraw his plea. (TR. Motion to Withdraw Hearing at 23-25).

Ms. Miller conceded that the parties had an agreement. At the hearing, she stated: "The only agreement between the parties is that I would stand on 25 in, 15 out at sentencing . . . ." (TR. Motion to Withdraw Hearing at 29). But Ms. Miller contended that she did not violate the agreement. Instead, she stated: "I stood on exactly what I told the attorney I would stand on. I simply asked the Court to stack some of these counts and run them consecutively." (TR. Motion to Withdraw Hearing at 29). Judge Schumacher acknowledged "there [wa]s a statement in Mr. Stanek's handwriting on the plea form . . . [and] Mr. Stanek made a statement on May 3 that is contained within the record." (TR. Motion to Withdraw Hearing at 31). Ultimately, however, the court denied the motion to withdraw on the basis that the plea had been "blind." (TR. Motion to Withdraw Hearing at 31).

## VI.    STANDARD OF REVIEW

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), this Court's power to grant habeas corpus relief to state prisoners is limited. *Snow v. Sirmons,* 474 F.3d 693, 696 (10th Cir. 2007). Under the AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. *Alverson v. Workman,* 595 F.3d 1142, 1146 (10th Cir. 2010) (citing *Snow,* 474 F.3d at 696). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Under the AEDPA, a petitioner is entitled to federal habeas relief only if the merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011). "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."

*Id.* at 185. "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted).

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court]." *Thaler v. Haynes*, 531 U.S. 43, 47 (2010). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of clearly established federal law. *Owens,* 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different" and "mutually opposed" to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.*

(citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted). So, to qualify for habeas relief on this prong, a petitioner must show that "'there was no reasonable basis' for the state court's determination." *Id.* at 1242-43 (citation omitted).

In sum, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 101–02 (2011). Relief is warranted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 102. The deference embodied in § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citation omitted).

## VII. GROUND ONE

In Ground One, Mr. Powell argues that his plea agreement was not knowingly and voluntarily entered because the State had failed to honor an agreement regarding a sentence recommendation. (ECF No. 12-1:12-23).[3] The OCCA rejected this claim on

---

[3] In Ground One, Mr. Powell also alleges that his plea was not knowing or voluntary because he was unaware that the Court could sentence him to more than what he thought the State was going to recommend. (ECF 12-1:12-23). But the Court need not address these allegations, as habeas relief is warranted with regards to Mr. Powell's claim that the State had breached the plea agreement. *See infra*.

review of Mr. Powell's Petition for Writ of Certiorari, but the OCCA's determination was contrary to Supreme Court law.

### A. Breach of the Plea Agreement-as Determined by the OCCA

"Plea bargains are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 138 (2009). As such, general principles of contract law define the content and scope of the State's obligations under a plea agreement. *See United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007). Ordinarily, a two-step analysis would be employed to determine whether the State had violated a plea agreement. The Court would first examine the nature of the promise and then evaluate the entire record to determine the defendant's understanding of the promise at the time of the guilty plea. *United States v. Guzman,* 318 F.3d 1191, 1195–96 (10th Cir. 2003).

Here, the issue concerns an alleged violation by the State regarding an agreement for a sentence recommendation. But the Court may bypass the analysis to determine whether a breach of the plea agreement has, in fact occurred. The OCCA followed this approach and answered the question affirmatively. The OCCA stated:

> Powell first argues that his plea was rendered involuntary by the State's recommendation of consecutive sentences at sentencing. Powell contends that he was induced to enter the plea on the understanding that the State would ask that he be sentenced to a total of forty years imprisonment, with all but the first twenty-five years to be suspended, for his crimes. However, by asking the court to order some of his sentences to be served consecutively, the State effectively sought an aggregate sentence of ninety years imprisonment, with all but the first seventy-five years to be suspended. Ordinarily this would render a plea of guilty involuntary and entitle the defendant to withdraw his plea. *Santobello v. New York*, 404 U.S. 257, 261-62 [] (1971).
>
> We find the prosecutor's actions in this case to be deceptive and reprehensible. While we do not condone such conduct, under the facts of

this case it does not require relief on appeal. The record before this Court establishes that prior to imposing sentence, the trial court gave Powell an opportunity to withdraw his plea of guilty and have his case reset for jury trial. Powell elected not to do so. Contrary to his suggestion, there is nothing in the record to support the position that Powell's decision to reaffirm his plea was involuntary.

(ECF No. 12-2:3).

Citing Supreme Court precedent, the OCCA recognized that the State violated the terms of the plea agreement with Mr. Powell. *See* ECF No. 12-2:3. The OCCA then attempted to salvage the error by relying on an alternate theory of voluntariness. But the OCCA's decision directly conflicts with Supreme Court law.

**B.     The OCCA's Decision is Contrary to Supreme Court Law**

The OCCA affirmed Mr. Powell's conviction and sentence despite the court's acknowledgment that a breach had occurred. (ECF No. 12-2:3). In doing so, the court made two findings. First, the court stated that the breach would "[o]rdinarily. . . render a plea of guilty involuntary and entitle the defendant to withdraw his plea." Second, the court tried to salvage the conviction and sentence despite the breach by finding that Mr. Powell had voluntarily reaffirmed his plea prior to sentencing. Both of these findings are contrary to United States Supreme Court law as set forth in *Santobello v. New York*, 404 U.S. 257 (1971) and *Puckett v. United States*, 556 U.S. 129 (2009).

In *Santobello*, the petitioner pled guilty in exchange for the State's promise to abstain from recommending a particular sentence. *Santobello*, 404 U.S. at 258. At sentencing, however, a different prosecutor was present who recommended the maximum sentence. *Id.* at 259. The Court found that the State had promised to refrain

from making a recommendation on sentencing and the fact that the agreement may have been inadvertently breached did not lessen the impact of the violation. *Id.* at 262.

The Court stressed the importance in presupposing fairness during plea negotiations, explaining that guilty pleas "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id.* Although the circumstances might vary, the Court held that one constant factor was that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 262. As a result of the breach, the Court held that "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty" required remand to the state court for a determination regarding what type of relief should be awarded. *Santobello*, 404 U.S. at 262-263. *Santobello* did not explicitly discuss whether the breach had affected the voluntary nature of the plea. Instead, the Court simply determined that upon proof that a breach had occurred, the petitioner was entitled to relief.

However, in *Puckett v. United States*, the Supreme Court answered any lingering doubt regarding the impact of a breach on the voluntary nature of a defendant's plea. In *Puckett*, the defendant alleged that the Government violated the terms of a plea agreement, and that the broken promise had rendered the plea unknowing and involuntary, "because (as it turned out) the defendant was not aware of the plea

agreement's true consequences." *Puckett*, 556 U.S. at 136. The Supreme Court found

the defendant's argument "defect[ive]." *Id.* The Court explained:

> First, there is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary. Any more than there is anything to support the proposition that a mere breach of contract retroactively causes the other party's promise to have been coerced or induced by fraud. Although the analogy may not hold in all respects, plea bargains are essentially contracts. When the consideration for a contract fails—that is, when one of the exchanged promises is not kept—we do not say that the voluntary bilateral consent to the contract never existed, so that it is automatically and utterly void; we say that the contract was broken. The party injured by the breach will generally be entitled to some remedy, which might include the right to rescind the contract entirely, but that is not the same thing as saying the contract was never validly concluded.
>
> So too here. When a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, *i.e.,* to withdraw his plea. But rescission is not the only possible remedy; in *Santobello* we allowed for a resentencing at which the Government would fully comply with the agreement—in effect, specific performance of the contract. In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely *because* the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain.

*Puckett*, 556 U.S. at 137-138 (internal citations omitted).

Under *Puckett*, the impact of a breach, therefore is *not* that the agreement is

somehow rendered "involuntary," rather a breach simply requires the offending party to

remedy the wrong.

When the OCCA upheld Mr. Powell's conviction despite the State's breach of the

plea agreement, the court made two findings. First, citing *Santobello*, the OCCA stated

that the breach would "[o]rdinarily. . . render a plea of guilty involuntary and entitle the defendant to withdraw his plea." Second, the court tried to salvage the error despite the breach because Mr. Powell had voluntarily reaffirmed his plea prior to sentencing. The OCCA's decision violated *Santobello* and *Puckett* in two ways.

First, the OCCA wrongly concluded that the violation of *Santobello* would "ordinarily. . . render [Mr. Powell's] plea of guilty involuntary . . . ." (ECF No. 12-2:3). As explained in *Puckett*, "[i]t is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely *because* the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain." *Puckett*, 556 U.S. at 137-38. Both *Santobello* and *Puckett* make clear that if a breach has occurred, the automatic and only result is to determine an appropriate remedy for the wronged party. *See Santobello*, 404 U.S. at 262-263 ("the interests of justice" required remand to the state court); *Puckett*, 556 U.S. at 137 ("The party injured by the breach will generally be entitled to some remedy. . . which may include rescission of the agreement . . . [or] specific performance of the contract."); *Id.* at 141 (discussing "automatic reversal" under *Santobello*); *see also United States v. VanDam*, 493 F.3d 1194, 1203-04 (10th Cir. 2007) (discussing "*Santobello's* automatic remand rule").

Instead of determining an appropriate remedy for Mr. Powell, the OCCA committed a second error when it attempted to salvage the State's breach by finding a *different basis* on which to conclude that Mr. Powell had voluntarily entered the plea— namely because Petitioner had re-affirmed his plea prior to the being sentenced. (ECF

No. 12-2:3). But this rationale is again, directly contrary to the dictates of *Puckett* which specifically held that a breach of a plea agreement does not affect the voluntary nature of the plea. *Puckett*, 556 U.S. at 137-138.[4]

The OCCA's decision to uphold Mr. Powell's conviction was directly contrary to the Supreme Court's decisions in *Santobello* and *Puckett*. Under those decisions, upon finding that the State had breached the plea agreement with Mr. Powell, the OCCA should have concluded that he was automatically entitled to some sort of relief. The court failed to do so and the decision was contrary to Supreme Court precedent. As a result, Mr. Powell is entitled to habeas relief on Ground One involving the allegations that the State violated the plea agreement.

## C.     Remedy

"In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters 'as law and justice require.'" *Paxton v. Ward*, 199 F.3d 1197, 1219 (10th Cir. 1999) (citing *Burton v. Johnson,* 975 F.2d 690, 693 (10th Cir. 1992) (quoting 28 U.S.C. § 2243)). Promoting the "interests of justice" and recognizing "the duties of the prosecution in relation to [guilty-plea] promises", the Court in *Santobello* identified the available remedies upon a determination that a plea agreement had been breached: (1) specific performance of the plea agreement, or (2)

---

[4] The OCCA's rationale involving Petitioner's re-affirmation of the plea prior to sentencing is akin to determining that the breach, as defined by *Santobello*, was harmless. The Tenth Circuit Court of Appeals has specifically disavowed such a theory, stating that *Santobello* "precludes harmless-error review." *United States v. VanDam*, 493 F.3d 1194, 1202 (10th Cir. 2007). In doing so, the Court reasoned that *Santobello* was concerned with answering only two questions: (1) whether relief is required for a breach of a plea agreement, and (2) if so, what remedy to provide. *Id.* at 1202.

withdrawal of the guilty plea. *Santobello*, 404 U.S. at 262. Here, the interests of justice

dictate that Mr. Powell be allowed to withdraw his guilty plea.

At the Motion to Withdraw hearing, the following exchange occurred between

Mr. Powell and his attorney:

Q:     Can you read that entire question [number 25] on the plea form?

A:     Yes.

Q:     Would you please?

A:     Do you understand the Court is not bound by any agreement or
       recommendation and if the Court does not accept the plea
       agreement, you have the right to withdraw your plea of guilty.

Q:     Based on that entire question, what do you believe that question to
       mean?

A:     If she don't stand by the plea agreement, then I got a right to
       withdraw my plea.

Q:     Is it your belief that that's what we're doing here today?

A:     Yes, sir.

(TR. Motion to Withdraw Hearing at 23-24).

Defense counsel then asked Petitioner why he did not object to the

recommendation in open court when he was given the opportunity to speak. (TR.

Motion to Withdraw Hearing at 25). In response, Petitioner stated that he mentioned it

to his lawyer and he believed doing so was sufficient to notify all parties that he

believed the prosecutor had violated the plea agreement and he had a right to

withdraw his plea. (TR. Motion to Withdraw Hearing at 25).

Considering: (1) the statement in question 25 of the Guilty Plea form concerning Petitioner's right to withdraw his plea if the court did not accept the plea agreement, and (2) Mr. Powell's testimony at the Motion to Withdraw hearing, the Court should conclude that the interests of justice dictate that Mr. Powell be allowed to withdraw his guilty plea.

## VIII.  GROUNDS TWO AND THREE

In Ground Two, Mr. Powell alleges that his plea was not knowing and voluntary because he was unaware that he could be subjected to paying a fine if he was convicted. And in Ground Three, Petitioner alleges that he suffered prejudice because the written Judgment & Sentence did not coincide with the trial court's oral pronouncement at the sentencing hearing. The Court need not address these allegations in light of the recommendation for habeas relief on ground one. *See Cargle v. Mullin*, 317 F.3d 1196, 1225, n.23 (10th Cir. 2003) ("Because of our decision to grant habeas relief on the basis of ineffective assistance of counsel and, alternatively, on the basis of cumulative error, we need not address any of petitioner's other claims.").

## IX.    RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be **GRANTED**. Specifically, the undersigned recommends that the Petition be **GRANTED** with regard to Petitioner's Ground One claim that the State of Oklahoma breached the plea agreement with Mr. Powell when it recommended a sentence that exceeded the plain language of the plea agreement. It is recommended that the case be **REMANDED** to the state court in accordance with this opinion to allow Mr. Powell to withdraw his guilty

plea based upon the Supreme Court's decisions in *Santobello v. New York*, 404 U.S. 257 (1971) and *Puckett v. United States*, 556 U.S. 129 (2009).

## X.    NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **April 18, 2016**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## XI.    STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on March 29, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE